IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

GREGORY PAUL CARR                                                                      PLAINTIFF

v.                                                                         No. 4:16CV88-MPM-DAS

OFFICER LLOYD HOOVER
CHIEF FREDDIE CANNON
MAYOR JOHN COX                                                                      DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Gregory Paul Carr, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that defendant Lloyd Hoover arrested him without a warrant or probable cause in violation of the Fourth Amendment to the United States Constitution. The defendant filed a motion for summary judgment, and the plaintiff responded. After reviewing the motion and response, the court ordered additional briefing on the matter in accordance with Fed. R. Civ. P. 56. The defendant has provided the additional briefing, as has the plaintiff. The matter is ripe for resolution. For the reasons set forth below, the motion by the defendant for summary judgment will be granted, and judgment will be entered for the defendant in all respects.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*,

177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Facts Allegedly in Dispute**

In response to the court's invitation for additional briefing in this case, Mr. Carr has argued that summary judgment is inappropriate because several material facts are in dispute. He is mistaken, and the court will address each fact in turn. First, Mr. Carr disputes whether an unknown female called 911, asked for police assistance, then hung up. However, when asked about this during his deposition, he stated that he did not know anything about the 911 call:

> Q: … But to make sure I'm understanding, you don't know whether somebody called 911 or not?
>
> A: I mean, I don't know.

Doc. 93-3 at 23.

He gave the same answer later on in his deposition:

> Q: … Do you know who made the call?
>
> A: I do not know who made the call.
>
> Q: But you have no reason to dispute the call was made?
>
> A: I don't even know if the call was made or not.

Doc. 93-3 at 32. Thus, the ample proof of the call in the record before the court is undisputed.

Second, Mr. Carr disputes whether a woman was crying at the residence when Officer Hoover arrived at the scene. The court will thus assume, for the purposes of summary judgment, that no one was crying at the scene during that time.

Third, Mr. Carr disputes that his truck was running and the lights were on. Again, the court will assume, for summary judgment purposes, that the truck was not running and that the lights were off.

Mr. Carr's fourth contested material fact is the same as the third.

Fifth, Mr. Carr states that he was not loud and did not use profane language. The court will assume in its analysis that this assertion is true.

Sixth, the court will accept as true for summary judgment analysis that Mr. Carr did not have alcohol on his breath.

Seventh, the court will accept as true on summary judgment that Officer Hoover never asked him about the tools in his truck.

Eighth, the legality of Mr. Carr's possession of Sudafed and how it relates to probable cause, are issues of law based upon other facts gleaned during this case. Thus, these issues are not, themselves, facts which may be used to defeat a motion for summary judgment.

Ninth, whether Officer Hoover investigated the scene and questioned the *other* people present is not material to whether he had probable cause to arrest *Mr. Carr*. Further, in any event, Mr. Carr concedes that Officer Hoover looked in his truck, found the Sudafed, and saw the tools.

Tenth, the issue regarding whether Officer Hoover arrested others on the scene is not material to the question of whether probable cause existed to arrest Mr. Carr. However, Mr. Carr testified at his deposition that one other person was arrested at the scene. He stated during his deposition:

A: I mean, when I got arrested, *along with somebody at that house* – [the officer] that arrested me was Lloyd Hoover.

Doc. 93-3 at 28 (emphasis added).

Eleventh, the issue regarding the existence of probable cause to arrest Mr. Carr is a question of law, not fact. Thus, it cannot be used to defeat a motion for summary judgment.

Finally, the issue regarding whether Officer Hoover had probable cause to be at the residence on Sunflower Lane is also one of law – and cannot defeat a summary judgment motion. In any event, it is undisputed that Officer Hoover was dispatched to that residence because someone inside had called 911, hung up, and did not answer the telephone on recall. These facts establish probable cause to investigate the residence.

## Undisputed Material Facts[1]

The court obtained the following facts from the plaintiff's allegations, his testimony at the *Spears* hearing, and various documents the parties have submitted during the summary judgment process. In Greenville, Mississippi, on July 31, 2014, at 4:44 a.m., an unknown female called 911 dispatch, said, "I need a policeman," then hung up. Doc. 107-1 at 1; Doc 94-5 at 3. While the 911 operator tried to call back, Officer Lloyd Hoover was dispatched to the 400 block of Sunflower Lane and arrived at 4:49 a.m. *Id.* When he arrived at the scene, he heard someone lock the door. *Id.* When he first knocked on the door, no one would answer, but the door opened after several minutes. *Id.* Officer Hoover entered the house and ordered the two males and four females to go outside and get on

---

[1] For the purposes of the instant motion for summary judgment, the court will take the evidence Mr. Carr has submitted as true, whether the evidence is competent to support a motion for summary judgment or not.

the ground until he could assess the situation. *Id.* He saw Gregory Paul Carr among those in the house, recognized him from previous encounters, and asked whose truck was parked out front. *Id.* Mr. Carr acknowledged that the truck was his. *Id.* Officer Hoover inspected Carr's 2001 Chevrolet pickup and saw 7 boxes of Sudafed on the console. *Id.* Mr. Carr's truck did not have a license plate, and he had been arrested multiple times in Greenville for driving without a license and operating a vehicle without insurance. Doc. 99 at 57, 63, 65; Doc 93-3 at 26-27. Mr. Carr was well known to local law enforcement because of previous encounters. Doc. 93-6 at 3. When Officer Hoover questioned Mr. Carr about the Sudafed, he claims that Carr began yelling and cursing at him; Hoover also said he smelled alcohol on Mr. Carr's breath.[2] Doc. 107-1 at 2.

Hoover then arrested Carr for possession of a controlled substance, the Sudafed. *Id.* Officer Hoover looked into the truck prior to towing and saw "what appeared to be stolen items" in the front and back of the truck. Doc. 107-a at 2; Doc. 99 at 36. Officer Hoover saw that many of the tools were labeled, but he could not read the labels at the time. Doc. 107-1 at 2. At the police station, an inventory of the items in the bed and cab of the truck revealed a large number of power tools, hand tools, and other items. Doc. 99 at 53-54. Several of the tools bore the name of a business, "Acy Mechanical," and one also had the name "Ronnie Moore" written on it. Doc. 93-6 at 1-2.

At the time of his arrest, Mr. Carr was already facing charges of burglary, and aggravated assault. Doc. 93-1 at 1-2. Upon return to the Police Department, Carr's vehicle and the property within it were "put on hold" by Investigator O'Neil. Doc. 93-5 at 4. During Carr's booking process,

---

[2] At his *Spears* hearing, Mr. Carr denied that he shouted and that he had been drinking. Thus, the court will not consider these facts on summary judgment.

which concluded at 7:01 a.m., the dispatcher at the police station told Officer Hoover that the Sudafed at issue was not a controlled substance. Doc. 93-5 at 1-2, Doc. 107-1 at 2. At that point, Officer Hoover added charges of public drunkenness and creating a disturbance – both misdemeanors – and Mr. Carr remained in detention for booking.[3] At 6:36 a.m., 25 minutes before Mr. Carr was booked into jail, officers arrived at the Rodeway Inn to investigate the report of an automobile burglary in which tools had been stolen. Doc. 93-7 at 1. An investigation by Officers Love and Smith revealed that Mr. Carr and his girlfriend had broken into several vehicles at the local Rodeway Inn and had taken tools and other items from those vehicles. Doc. 93-6 at 1-4, Doc. 93-7 at 1-4. The events were captured, in color, on the hotel's video monitoring equipment. *Id.* The officers investigating the automobile burglaries then contacted Officer Hoover, and it became apparent that nearly all the items in the truck had been stolen from vehicles at the Rodeway Inn. *Id.*, Doc. 93-6 at 1-4. Thus, as reflected on Mr. Carr's Intake Sheet, prior to Mr. Carr's 7:01 a.m. booking, he was also arrested and detained for two counts of burglary of an automobile at the Rodeway Inn. Doc. 93-5 at 1-2.

Mr. Carr was then held without bail in the Washington County Regional Correctional Facility until July 8, 2015, when all three of the pending misdemeanor charges – possession of a controlled substance, public drunkenness, and causing a disturbance – were either dismissed or retired to the file. During his stay in jail, Mr. Carr lost his job, his income, his truck, and its contents (the ones that had not been stolen).[4] He pled guilty on December 3, 2015, to the charges of aggravated assault (from a

---

[3] The court will not consider these charges during the summary judgment phase, as Mr. Carr has contested whether he had been drinking and whether he created a disturbance.

[4] Mr. Carr made the bare allegation in his deposition that all the tools in his truck that morning belonged to him. However, the video surveillance, the identification of the tools (including the ones

2013 incident), was sentenced to 15 years' incarceration, with 10 to serve, and received credit towards his sentence for the time he served in jail awaiting disposition of the case. Doc. 93-1 at 3-4. He also pled guilty to burglary of an automobile (from the day of the incident at issue in the present case.) Doc. 93-4 at 3.

In response to the court's order requiring additional briefing, Officer Hoover provided a more detailed account of the events relevant to a probable cause determination. That account is set forth verbatim below:

> On the morning of July 31, 2014, Officer Hoover responded to the 400 block of Sunflower Lane in Greenville in response to a call for police assistance from an unknown female. *See* Declaration of Hoover, ¶ 3. Officer Hoover knocked on the door of the residence and, after a few minutes, the door opened. *Id.* Office Hoover instructed the two males and four females present to exit the residence and get on the ground while he determined what was going on. *Id.* Officer Hoover noticed a gold Chevy pick-up truck parked at the residence. *Id.* at ¶ 4. The truck was cranked and running with its lights on. *Id.* When Officer Hoover asked the persons present who the truck belonged to, Plaintiff responded that the truck was his. *Id.*
>
> On the console of the truck, Officer Hoover could see seven boxes of the medication "Sudafed." *Id.* Office Hoover asked Plaintiff why he possessed so many boxes of Sudafed but received no clear answer. *Id.* The large quantity of Sudafed possessed by Plaintiff, coupled with Sudafed's use in making crystal methamphetamine, led Officer Hoover to believe that Plaintiff was in possession of a controlled substance. *Id.*
>
> Officer Hoover also noticed a large number of marked tools both in the bed and in the cab of Plaintiff's truck. *Id.* at ¶ 5. There was writing on the tools, but Officer Hoover could not make out the exact words. *Id.* Again, when asked by Officer Hoover why he had so many marked tools in his possession, Plaintiff did not answer. *Id.* Given the large number of tools, Plaintiff's inability to explain why he possessed the tools, and no knowledge as to why Plaintiff would possess so many tools, Officer Hoover believed that the tools were stolen. *Id.* Officer Hoover arrested Plaintiff on charges of possession of a controlled substance, public drunk, and disturbing the peace. *Id.* at ¶ 6.

---

bearing labels), the return of the tools to the burglary victims, and Mr. Carr's plea of guilty to the auto burglaries establish that the ownership of the tools in his truck is not a *genuine* issue of material fact.

ECF Doc. 108 at 1-2.[5]

**Timeline**

The court finds a timeline to be useful to clarify the sequence of events from the initial 911 call through Mr. Carr's arrest at the Police Department for automobile burglary.

July 31, 2014:

| | |
|---|---|
| 4:00 a.m. - 4:30 a.m. | Surveillance video captures Carr and his girlfriend breaking into vehicles at the Greenville, Mississippi Rodeway Inn. Doc. 93-7 at 1-4. |
| 4:44 a.m. | Woman calls 911 asking for the police. Doc. 93-5 at 3 |
| 4:46 a.m. | Officer Hoover dispatched to the address of the 911 call. *Id*. |
| 4:49 a.m. | Officer Hoover arrives at the scene. *Id*. |
| About 5:00 a.m. – 5:15 a.m.[6] | Officer Hoover arrests Gregory Carr on charges of public drunkenness, creating a disturbance, and possession of a controlled |

---

[5] Mr. Carr alleges that his vehicle was not cranked and that the lights were not on. He also alleges that Officer Hoover never asked him about the tools or the Sudafed before arresting him on the charge of possession of a controlled substance. The court will, for the purposes of the instant motion for summary judgment only, will take these assertions as true.

[6] To make the timeline easier to read, the court has estimated the timing of two of the events: the time Officer Hoover arrested Mr. Carr and the time the officers viewed the surveillance video and contacted Officer Hoover. These estimates do not change the outcome of the case, as the exact times are tightly constrained based upon the time Officer Hoover completed his written report (Doc. 99 at 36-37), the times dispatch recorded on the incident reports (Doc. 93-7 at 1), and the time recorded on Mr. Carr's Intake Sheet (93-5 at 1-2). The court finds these times to be the most accurate, as the times provided in other places are rough estimates of law enforcement officers and victims in the field, while the dispatcher and officers at the station check and record the sequence of events for official police documents.

|  | substance (7 boxes of Sudafed), and transports him to the jail, where he awaits booking. *Id.*[7] |
|---|---|
| 5:30 a.m. | Officer Hoover completes a written report of Carr's initial arrest, and 7 boxes of Sudafed are inventoried at Police Department. Doc. 99 at 36-37. |
| 6:31 a.m. | Victim Chris Daley reports stolen tools at the Rodeway Inn. Doc. 93-7 at 1. |
| 6:32 a.m. | Officer Love dispatched to Rodeway Inn. *Id.* |
| 6:36 a.m. | Officer Love arrives at Rodeway Inn. *Id.* |
| Shortly after 6:36 a.m. | Officers Love and Smith interview Daley and review Rodeway Inn surveillance video of Carr breaking into vehicles and removing tools and other items from them. The officers are familiar with Mr. Carr because of his previous arrests. Doc. 93-6 at 1-4. |
|  | Officers Love and Smith contact Officer Hoover to compare tools from Carr's truck with the victim's list of stolen tools, and some of the items match. 93-7 at 2, 4. |
| 7:01 a.m. | Carr booked into Greenville City Jail on three misdemeanor charges and two felony counts of burglary of an automobile. Doc. 93-5 at 1-2. |
|  | During booking "the woman" at the station tells Officer Hoover that possession of the type and amount of Sudafed at issue does not violate Mississippi law. Docs. 93-3 at 26; 107-1 at 2. |

**Probable Cause**

The sole issue remaining in this case is whether Officer Lloyd Hoover had probable cause to arrest Mr. Carr for possession of a controlled substance in the early morning hours of July 31, 2014,

---

[7] Mr. Carr disputes whether he was charged *at the scene* for public drunkenness and creating a disturbance. He alleges that he was charged only with possession of a controlled substance at the scene – and that Officer Hoover added the other charges during the booking process at the station. This issue of fact is not material to the outcome of this case.

then continue to hold him after learning that possession of the type and amount of Sudafed did not constitute a crime under Mississippi law. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. See *United States v. Watson,* 423 U.S. 411, 417–424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). The test is an objective one; the arresting officer's subjective state of mind is irrelevant to the inquiry. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 593, 160 L. Ed. 2d 537 (2004). The probable cause requirement does not require any showing that such a belief is correct or more likely true than false. *Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

A sheriff executing an arrest warrant is not required by the Constitution to independently investigate every claim of innocence. *Id.* "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Baker*, 443 U.S. at 145. A person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not entitled to a separate judicial determination that probable cause exists to detain him prior to trial. *Id.* at 144. An officer conducting a warrantless arrest may establish probable cause based upon facts known to him at the time, even if the facts support a charge not stated during the suspect's arrest. *Devenpeck, supra*, at 152–53. Thus, if a court determines that probable cause did not exist to support a suspect's warrantless arrest on one

charge, the arrest is nonetheless valid if, at the time, the arresting officer had knowledge of facts supporting the suspect's arrest for a different crime. *Id.* at 153.

**Initial Arrest at the Scene**

In this case, Officer Hoover believed that the facts available to him at the scene supported Mr. Carr's arrest for possession of a controlled substance, the seven boxes of Sudafed. Officer Hoover initially charged Mr. Carr with possession of a controlled substance because he possessed the Sudafed. Doc. 107-1 at 2. Officer Hoover learned that the type and amount of Sudafed that Carr possessed (which apparently could not be used to manufacture crystal methamphetamine), was not a controlled substance when Carr was booked at the police station – a process completed at about 7:01 a.m.) Docs. 93-3 at 26; 107-1 at 2. Given Sudafed's use in manufacturing crystal methamphetamine, and Mississippi's law limiting its possession, Miss. Code Ann. § 41-29-313, Officer Hoover's initial belief that a criminal offense was taking place was reasonable. Doc. 107-1 at 2; *see Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer); *see also United States v. Rivera-Alonso*, 690 Fed. App'x 273, 274 (5th Cir. 2017) (quoting *United States v. Jacquinot*, 258 F.3d 423, 427-28 (5th Cir. 2001)) ("[f]actors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers"). Thus, though Officer Hoover was mistaken about the legality of Mr. Carr's possession of the Sudafed, his initial arrest of Mr. Carr for possession of a controlled substance was supported by probable cause.[8]

---

[8] As Mr. Carr has contested whether he was drunk in public and disturbed the peace, and whether Officer Hoover asked him about the Sudafed and tools, the court will not consider those as facts in the present ruling on the defendant's motion for summary judgment.

**Probable Cause to Continue Detaining Mr. Carr at the Police Station**

Mr. Carr also seems to argue that Officer Hoover should have released him the moment he discovered that possession of the type and amount Sudafed at issue was lawful. However, after a suspect's warrantless arrest upon probable cause, the police may properly subject an arrestee to "a brief period of detention to take the administrative steps incident to arrest." *Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S. Ct. 854, 863, 43 L. Ed. 2d 54 (1975).

The period at issue in this case is small, between one and two hours, and it is rare for strong exculpatory information to come to light in such a short time. As such, there is very little authority on this topic. The Fifth Circuit has, however, spoken to the issue:

> We conclude that a person may constitutionally be detained for at least four or five hours following a lawful warrantless arrest for public intoxication without the responsible officers having any affirmative duty during that time to inquire further as to whether the person is intoxicated, even if requested to do so. *However, once a responsible officer actually does ascertain beyond reasonable doubt that one who has been so arrested is in fact not intoxicated, the arrestee should be released.*[3]
>
> …
>
> A policy requiring continued detention and denial of otherwise available bail after determination beyond reasonable doubt that one held on a proper warrantless arrest for public intoxication is in fact not intoxicated and that probable cause no longer exists raises obvious constitutional concerns.[4]
>
> …
>
> FN 3. This case does not present, and we do not rule on, the question of whether or under what circumstances release may be conditioned on bond in such a situation. *Nor do we address when an arrestee should be brought to jail and/or formally charged and booked*, or possible duties respecting an arrestee's serious medical needs. Further, we do not address arrest pursuant to warrant.
>
> FN 4. *We do not suggest that such a detainee need be released forthwith upon ascertainment that he is clearly not intoxicated;* **reasonable time for administrative processing, return of property, making bail (if and where appropriate), etc., would be permissible.**

*McConney v. City of Houston*, 863 F.2d 1180, 1185 (5th Cir. 1989) (emphasis added).

In the present case, sometime during the booking process, by about 5:15 a.m., at the earliest, someone at the police station told Officer Hoover the type and amount of Sudafed that Mr. Carr possessed did not rise to the level of a criminal violation.[9] Between 6:36 a.m. (when officers arrived at the Rodeway Inn) and 7:01 a.m. (when booking was complete), officers had: (1) viewed video surveillance showing Mr. Carr burglarizing vehicles at the Rodeway Inn, (2) reported their findings over police radio, and (3) and contacted Officer Hoover with that information. Doc. 93-6 at 1-2; 93-7 at 2, 4. Probable cause existed to detain Mr. Carr for automobile burglary at this point.

Indeed, as shown on Mr. Carr's Intake Sheet, by 7:01 a.m. he was already charged with possession of a controlled substance *and two counts of burglary of an automobile*. Doc. 93-5 at 1-2. The color video of Mr. Carr breaking into vehicles at the Rodeway Inn and taking items from within them would lead a reasonable officer to believe that he had committed the crime of burglary of an automobile, thus establishing probable cause to arrest and detain him on those charges.[10] Mr. Carr's detention of, at most, about an hour and forty-five minutes (the time between Hoover's discovery of his mistake of law and the auto burglary report) constitutes "reasonable time for administrative

---

[9] Though it is not clear that the unverified statement of another officer established – beyond reasonable doubt – that Mr. Carr had not violated the law, the court will, however, assume without deciding that it did.

[10] Under the collective knowledge doctrine, it is not necessary for the arresting officer to know all the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary facts. *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007) (internal citations omitted).

processing, return of property, making bail (if and where appropriate), etc." under *McConney, supra,* and is thus permissible under the Fourth Amendment. Every police department has a system for completing the paperwork necessary to process suspects into jail. In Mr. Carr's case, his burglaries at the Rodeway Inn were discovered before the booking process was complete, and he was charged with those crimes, as well, when he was booked at 7:01 a.m. Mr. Carr's claim that Officer Hoover did not have probable cause to arrest and detain him is thus without substantive merit.

## Qualified Immunity

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege the violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir.2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836-37.

Under this standard, even if Mr. Carr had experienced a constitutional violation, Officer Hoover is entitled to qualified immunity from the claim of unlawful arrest and detention because his "conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officer Hoover need not have possessed actual probable cause to defeat an individual capacity claim, but only "arguable" probable cause. *See Wesby*, 138 S.Ct. at 591 ("Even assuming the officers lacked actual probable cause[,] the officers are entitled to qualified immunity because they 'reasonably but mistakenly conclude[d] that probable cause [wa]s present.'"). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Officer Hoover's mistake regarding the type and amount of Sudafed Mr. Carr possessed and its legal implications clearly falls within the realm of qualified immunity. Further, the video of Mr. Carr committing auto burglary at a nearby hotel earlier that same morning – which came to law enforcement's attention sometime shortly after 6:36 a.m. – easily provided probable cause to continue detaining Mr. Carr on felony charges.

The plaintiff bears the significant burden of showing that Officer Hoover did not have at least arguable probable cause under the two-step qualified immunity analysis. *See Wesby*, 138 S.Ct. at 589-90. The first step is the nomination phase, in which a plaintiff must identify a similar case decided in his favor. In *Vann v. Southaven*, 876 F.3d 133, 136-39 (5th Cir. 2017), a panel reversed a grant of qualified immunity on a Fourth Amendment claim due to perceived factual disputes. After rehearing, however, the opinion was vacated. *See Vann*, 2018 WL 1147115. Unlike the original opinion, the new opinion held that "[i]t is the plaintiff's burden to find a case in his favor[.]" *Id.* at *1. The

plaintiff had "cited nary a pre-existing or precedential case . . . showing specific law on point[,]" so qualified immunity was reinstated. *Id.* at *2. Mr. Carr has not shown the court a case, decided in his favor, with a similar fact pattern to the present one, and the case the court identified would inure to the benefit of the defendants in the present case. Thus, Mr. Carr has not fulfilled the first step.

The second step, if the plaintiff had identified a specific case for consideration, is to determine if the case qualifies as "clearly established law." This determination requires the court to inquire whether the identified case is both "authoritative" and "specific." *See District of Columbia v. Wesby*, 138 S.Ct. 577, 589-90 (2018). The court must compare the facts of the case at bar with the facts of other cases that have been decided by the Supreme Court, the Fifth Circuit, or by a "robust consensus" of persuasive jurisdictions. *Id.* In *Wesby*, the Supreme Court reversed the D.C. Circuit for "not follow[ing] this straightforward analysis." *Id.* at 591. The dearth of case law on this narrow topic tends to show that the law is not "clearly established," which weighs in favor of finding that Officer Hoover is shielded from liability under the doctrine of qualified immunity.

As set forth in the section above, Officer Hoover believed that Mr. Carr's possession of seven boxes of Sudafed was a violation of Mississippi law, though he was mistaken. Qualified immunity shields law enforcement officers from just this type of mistake. *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008) ("A mistake reasonably made as to probable cause justifies qualified immunity"); *Pasco v. Knoblauch*, 566 F.3d 572, 582 (5th Cir. 2009) (Qualified immunity is designed to shield government officials from conduct that may have been a "reasonable mistake" or negligence.) In addition, the brief detention (about an hour-and-a-half) while Mr. Carr was booked is simply part of the "reasonable time for administrative processing, return of property, making bail (if and where appropriate), etc." under *McConney, supra*. Thus, even if the court were to find a constitutional

violation in the arrest and continued detention of Mr. Carr, Officer Hoover enjoys qualified immunity from suit. As set forth above, by the time Mr. Carr was booked into jail, other officers had tied Mr. Carr to two automobile burglaries, and he was properly held in jail on those charges from that point forward.

## Conclusion

For the reasons set forth above, the motion by the defendant for summary judgment will be granted, and judgment will be entered for the defendant in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 31st day of July, 2018.

>  **/s/ MICHAEL P. MILLS**
>  **UNITED STATES DISTRICT JUDGE**
>  **NORTHERN DISTRICT OF MISSISSIPPI**